FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

May 01, 2020

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ROLLIE M.,[1] | No. 1:19-cv-03241-MKD |
| Plaintiff, | |
| vs. | ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| ANDREW M. SAUL, COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | ECF Nos. 14, 16 |

Before the Court are the parties' cross-motions for summary judgment. ECF Nos. 14, 16. The parties consented to proceed before a magistrate judge. ECF No. 7. The Court, having reviewed the administrative record and the parties' briefing,

_____

[1] To protect the privacy of plaintiffs in social security cases, the undersigned identifies them by only their first names and the initial of their last names. *See* LCivR 5.2(c).

ORDER - 1

1    is fully informed.  For the reasons discussed below, the Court grants Plaintiff's

2    motion, ECF No. 14, and denies Defendant's motion, ECF No. 16.

3    **JURISDICTION**

4    The Court has jurisdiction over this case pursuant to 42 U.S.C. §§ 405(g);

5    1383(c)(3).

6    **STANDARD OF REVIEW**

7    A district court's review of a final decision of the Commissioner of Social

8    Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is

9    limited; the Commissioner's decision will be disturbed "only if it is not supported

10   by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153,

11   1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a

12   reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159

13   (quotation and citation omitted).  Stated differently, substantial evidence equates to

14   "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and

15   citation omitted).  In determining whether the standard has been satisfied, a

16   reviewing court must consider the entire record as a whole rather than searching

17   for supporting evidence in isolation. *Id.*

18   In reviewing a denial of benefits, a district court may not substitute its

19   judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152,

20   1156 (9th Cir. 2001).  If the evidence in the record "is susceptible to more than one

ORDER - 2

rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id.* An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

ORDER - 3

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v).  At step one, the Commissioner considers the claimant's work activity.  20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(b), 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two.  At this step, the Commissioner considers the severity of the claimant's impairment.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three.  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(c), 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the impairment is as severe or more

ORDER - 4

severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. §§ 404.1520(d), 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work).  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  In making this determination, the Commissioner must also consider vocational factors such as the claimant's age,

education, and past work experience.  20 C.F.R. §§ 404.1520(a)(4)(v),

416.920(a)(4)(v).  If the claimant is capable of adjusting to other work, the

Commissioner must find that the claimant is not disabled.  20 C.F.R. §§

404.1520(g)(1), 416.920(g)(1).  If the claimant is not capable of adjusting to other

work, analysis concludes with a finding that the claimant is disabled and is

therefore entitled to benefits.  20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above.

*Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to

step five, the burden shifts to the Commissioner to establish that 1) the claimant is

capable of performing other work; and 2) such work "exists in significant numbers

in the national economy."  20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2); *Beltran v.*

*Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

On January 27, 2012, Plaintiff applied both for Title II disability insurance

benefits and Title XVI supplemental security income benefits alleging a disability

onset date of April 1, 2007.[2]  Tr. 81, 221-33.  The applications were denied initially

---

[2] Plaintiff previously filed for benefits on April 21, 2009; the applications were

denied at the initial level and Plaintiff did not appeal the denials.  Tr. 1331.  The

ALJ found Plaintiff's alleged onset date was an implied request to reopen the prior

ORDER - 6

and on reconsideration.  Tr. 142-48, 154-71.  Plaintiff appeared before an

administrative law judge (ALJ) on February 3, 2014.  Tr. 38-78.  On April 23,

2014, the ALJ denied Plaintiff's claim.  Tr. 18-37.  Plaintiff appealed the denial,

which resulted in a remand hearing that took place December 5, 2017.  Tr. 1367-

1409.  On July 5, 2018, the ALJ issued a partially favorable decision, in which he

found Plaintiff became disabled on May 1, 2011.  Tr. 1327-58.

At step one of the sequential evaluation process, the ALJ found Plaintiff,

who met the insured status requirements through March 31, 2008, has not engaged

in substantial gainful activity since April 1, 2007.  Tr. 1334.  At step two, the ALJ

found that Plaintiff has the following severe impairments: Hepatitis C/chronic liver

disease, spine disorders, knee disorder, chronic obstructive pulmonary disease

(COPD), chronic venous insufficiency, osteomyelitis, stasis dermatitis, chronic leg

ulcers, affective disorder, post-traumatic stress disorder (PTSD), and anxiety

disorders.  *Id.*

---

applications but found there was a lack of evidence related to the period at issue

and therefore there was not good cause to reopen the prior applications.  Tr. 1331-

32.  As such, the ALJ found the period at issue for the current application begins

November 4, 2009, the day after the prior determination.  Tr. 1332.

ORDER - 7

1      At step three, the ALJ found Plaintiff did not have an impairment or

2   combination of impairments that meets or medically equals the severity of a listed

3   impairment prior to May 1, 2011.  Tr. 1335.  The ALJ then concluded that prior to

4   May 1, 2011, Plaintiff had the RFC to perform light work with the following

5   limitations:

> [Plaintiff] could stand and/or walk (with normal breaks) for a total of
> 4 hours in an 8-hour workday or work duties permit a sit stand/option
> [sic] for work tasks; sit for 6 hours in an 8-hour workday; frequently
> climb ramps and stairs, stoop, kneel, crouch, and crawl; occasionally
> climb ladders, ropes, and scaffolds; frequently reach laterally, in front,
> and overhead with the right upper extremity; must avoid concentrated
> exposure to extreme heat, cold, wetness, humidity, and vibration;
> must avoid concentrated exposure to fumes, odors, dusts, gasses and
> poor ventilation; must avoid moderate exposure to dangerous
> machinery and unprotected heights; can perform simple, routine tasks;
> can concentrate, persist, and maintain pace while performing simple
> work for an 8-hour workday with customary breaks and lunch; no
> contact with the general public for primary work tasks, but incidental
> contact is not precluded; occasional contact with coworkers but no
> collaborative work tasks; and can accept instructions from a
> supervisor and can work independently.

Tr. 1338.

15      At step four, the ALJ found Plaintiff has no past relevant work.  Tr. 1344.

16   At step five, the ALJ found that, considering Plaintiff's age, education, work

17   experience, RFC, and testimony from the vocational expert, there were jobs that

18   existed in significant numbers in the national economy that Plaintiff could perform,

19   such as coin machine collector, outside deliverer, and document preparer.  Tr.

20   1345.  Therefore, the ALJ concluded Plaintiff was not under a disability, as defined

ORDER - 8

1  in the Social Security Act, from the alleged onset date of April 1, 2007, through

2  April 30, 2011.  Tr. 1345.  Beginning May 1, 2011, the ALJ found Plaintiff's

3  chronic venous insufficiency meets Listing 4.11.  *Id.*  Per 20 C.F.R. §§ 404.984

4  and 416.1484, the ALJ's decision following this Court's prior remand became the

5  Commissioner's final decision for purposes of judicial review.

6  **ISSUES**

7       Plaintiff seeks judicial review of the Commissioner's final decision denying

8  him disability insurance benefits under Title II and supplemental security income

9  benefits under Title XVI of the Social Security Act prior to May 1, 2011.  Plaintiff

10  raises the following issues for review:

11       1.  Whether the ALJ properly evaluated the medical opinion evidence;

12       2.  Whether the ALJ properly inferred the onset date; and

13       3.  Whether the ALJ properly evaluated Plaintiff's symptom claims.

14  ECF No. 14 at 2.

15  **DISCUSSION**

16  **A. Medical Opinion Evidence**

17       Plaintiff contends the ALJ improperly weighed the opinions of treating

18  physician Mark Sauerwein, M.D.  ECF No. 14 at 6-16.

19       There are three types of physicians: "(1) those who treat the claimant

20  (treating physicians); (2) those who examine but do not treat the claimant

ORDER - 9

(examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan v. Massanari,* 246 F.3d 1195, 1201-02 (9th Cir. 2001) (citations omitted). Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's. *Id.* at 1202. "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id.* (citations omitted).

If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester v. Chater*, 81 F.3d 821, 830-831 (9th Cir. 1995)). The opinion of a nonexamining physician may

serve as substantial evidence if it is supported by other independent evidence in the record.  *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

Dr. Sauerwein gave multiple opinions regarding Plaintiff's functioning and limitations.  In June 2008, Dr. Sauerwein opined Plaintiff was limited to  lifting up to 15 pounds, he could perform activities 11 to 20 hours per week, and he opined Plaintiff had a temporary disability.  Tr. 358, 406, 745-46.  In June 2009, Dr. Sauerwein opined Plaintiff was unable to engage in work activities and he could handle only 10 hours per week of light exertion activities.  Tr. 384-85.  In September 2009, Dr. Sauerwein opined Plaintiff was an appropriate referral for Social Security but he doubted Plaintiff qualified for benefits, and he opined Plaintiff was limited to performing sedentary work, cannot engage in repetitive use of his lower extremities, cannot frequently stoop or bend, and could participate in job search activities for 10 to 15 hours per week.  Tr. 391-93.  In October 2010, Dr. Sauerwein opined Plaintiff might have a "partial permanent disability but not complete disability."  Tr. 432, 829.  In December 2010, Dr. Sauerwein opined Plaintiff could not perform job search activities full-time.  Tr. 760.  In June and July 2011, Dr. Sauerwein opined Plaintiff could not perform even sedentary work.  Tr. 761-62, 766-67.  In March 2013, Dr. Sauerwein opined Plaintiff must lie down for 30 minutes every few hours, he would miss four or more days of work per month if he worked on a regular and continuing basis, he can only perform light

1    work for four hours per day, and the limitations had existed since March 2008.  Tr.

2    868-70.

3         The ALJ gave "less weight" to all of Dr. Sauerwein's opinions prior to May

4    1, 2011 than he gave to the opinion of Dr. Staley.  Tr. 1342-43.  The ALJ gave "the

5    most weight" to Dr. Sauerwein's 2011 opinions that Plaintiff was unable to work.

6    Tr. 1346.  The ALJ gave "some weight" to Dr. Sauerwein's June 2013 opinion

7    because he did not adopt the opinion Plaintiff had been disabled since 2008.  *Id.*

8    As Dr. Sauerwein's opinions are contradicted by the opinion of Dr. Staley, Tr. 115-

9    18, the ALJ was required to give specific and legitimate reasons, supported by

10   substantial evidence, to reject Dr. Sauerwein's opinions.  *See Bayliss,* 427 F.3d at

11   1216.

12        The ALJ gave more weight to the opinion of Dr. Staley, a State agency

13   consultant, than he did to Dr. Sauerwein's opinions.  Tr. 1342-43.  When an ALJ

14   rejects contradicted opinions of physician, the ALJ must not only identify specific

15   and legitimate reasons for rejecting those opinions, but the decision must also be

16   "supported by substantial evidence in the record."  *Lester*, 81 F.3d at 830.  The

17   Court held in *Tonapetyan* held that a "contrary opinion of a non-examining

18   medical expert may constitute substantial evidence when it is consistent with other

19   independent evidence in the record."  *Tonapetyan v. Halter,* 242 F.3d 1144, 1149

20   (9th Cir. 2001); *Lester*, 81 F.3d at 830-31.

ORDER - 12

Dr. Staley opined in July 2012 that Plaintiff was capable of light exertion work, with standing/walking six hours in a day, frequent climbing ramps/stairs, stooping, kneeling, crouching, crawling, and reaching in front/laterally and overhead on the right, occasionally climbing ladders/ropes/scaffolds, and he should avoid concentrated exposure to environmental irritants.  Tr. 130.  Dr. Staley opined Plaintiff did not meet Listing 4.11 because his skin ulcers were self-induced, as they were related to Plaintiff injecting heroin.  *Id.*  In determining Plaintiff was not disabled prior to May 1, 2011, the ALJ gave "the most weight" to Dr. Staley's opinion, as the ALJ found the opinion was consistent with the objective evidence prior to May 1, 2011.  Tr. 1342.  However, the ALJ found Plaintiff more limited than Dr. Staley, for example, the ALJ limited Plaintiff to standing/walking only four hours in a day.  Tr. 1338.  The ALJ does not provide an explanation as to why he rejected Dr. Staley's opinion that Plaintiff could stand/walk six hours in a day.  Tr. 1342.

Further, the ALJ found Plaintiff meets Listing 4.11 beginning May 1, 2011.  Tr. 1345-46.  In making this determination, the ALJ gave the most weight to Dr. Sauerwein's opinions that Plaintiff was unable to work due to his ulcers and venous disease.  Tr. 1346.  However, the ALJ did not address Dr. Staley's opinion that Plaintiff did not meet Listing 4.11 through the date of his opinion in July 2012, nor did he address Dr. Staley's opinion that Plaintiff was capable of limited light

work through July 2012.  Because the ALJ relied on Dr. Staley's opinion to reject

Dr. Sauerwein's opinion as it related to the time period prior to May 1, 2011, while

the ALJ rejected multiple portions of Dr. Staley's opinion without explanation, and

the ALJ did not address Dr. Staley's opinion as it relates to the time period after

May 1, 2011, the ALJ's rejection of Dr. Sauerwein's opinion in favor of Dr.

Staley's opinion was not based on substantial evidence.

For the purposes of remand, the Court notes that the opinion the ALJ

rejected only because it was rendered by Dr. Sauerwein in 2005 was actually

rendered in 2009.  Tr. 385, 1343; ECF No. 14 at 11; ECF No. 16 at 11.  The ALJ

also did not explicitly address Dr. Sauerwein's December 2010 opinion.  Tr. 760,

1343.  On remand, the ALJ is directed to address each individual opinion's

limitations and duration.

**B. Onset Date**

Plaintiff contends the ALJ erred in failing to call a medical expert to

establish Plaintiff's onset date.  ECF No. 14 at 16-19.  When a claimant's

impairment does not have a sudden or traumatic origin, the ALJ's analysis of the

disability onset date should include a consideration of the claimant's allegations,

including the alleged onset date, work history, and the medical and other evidence.

ORDER - 14

1  SSR 83-20.[3]  While claimants have the burden of proof to establish disability, the

2  ALJ has a duty to assist in developing the record.  *Armstrong v. Comm'r, Soc. Sec.*

3  *Admin.,* 160 F.3d 587, 589 (9th Cir. 1998).  If the medical evidence is not definite

4  concerning the onset date and medical inferences need to be made, SSR 83-20

5  requires the ALJ call a medical expert to determine the onset date.  *DeLorme v.*

6  *Sullivan,* 924 F.2d 841, 848 (9th Cir. 1992); *Armstrong,* 160 F.3d at 590.  "If

7  reasonable inferences about the progression of the impairment cannot be made on

8  the basis of the evidence in the file and the additional relevant medical evidence is

9  not available, it may be necessary to explore other sources of documentation," such

10  as lay witness statements.  SSR 83-20.  If there is no legitimate medical basis for

11  an ALJ's disability onset date determination, the finding cannot stand.  *Id.*; *Morgan*

12  *v. Sullivan,* 945 F.2d 1079, 1083 (9th Cir. 1991)(reversing in part an ALJ's

13  determination of the onset date of mental disorders without the assistance of a

14  medical expert).

15       The ALJ found Plaintiff became disabled on May 1, 2011.  Tr. 1336.  The

16  ALJ found Plaintiff's chronic venous insufficiency met Listing 4.11 beginning

17  _____

18  [3] SSR 83-20 was rescinded and replaced by SSR 18-1p and SSR 18-2p in October

19  2018.  The Court applies the regulation in place at the time of the ALJ's July 2018

20  decision.

ORDER - 15

May 1, 2011 but did not satisfy the requirements of the Listing prior to that date. *Id.* The ALJ noted Plaintiff had ulcerations prior to May 2011, but the ulcerations were suspected or diagnosed as Methicillin-resistant Staphylococcus aureus (MRSA) infections, not chronic venous insufficiency, and they were treated successfully. *Id.* (citing Tr. 420-21, 430, 51). The ALJ found that Plaintiff's providers did not identify a potential venous disease until July 2011, when Plaintiff presented with a non-healing ulcer that first appeared May 2011. Tr. 1336 (citing Tr. 434, 437).

While the ALJ found the non-healing ulcer first presented May 2011, the ALJ cited to a follow-up appointment for the wound, in late May 2011. Tr. 1341 (citing Tr. 437). On May 16, 2011, Plaintiff was seen at an emergency department for the same right leg wound, described as being located in the right "lower leg." Tr. 526-30. Plaintiff reported the wound appeared two weeks prior. Tr. 526. However, in February 2011, Plaintiff was seen for wounds on his right hand and right lower extremity. Tr. 533. The wounds were noted as "non-healing" and were the same wounds Plaintiff was seen for two weeks prior. *Id*. At that time, Plaintiff was noted as being a chronic heroin user, who reported he did not intend to discontinue intramuscular injection of heroin. Tr. 535, 549. At the earlier visit in February 2011, Plaintiff was seen for a right hand wound and right lower leg wound, both of which were described as ulcers and "IV drug use sites," and

ORDER - 16

Plaintiff reported injecting three times per day.  Tr. 542, 548.  Plaintiff reported his symptoms had begun February 1, 2011.  Tr. 548.  Plaintiff's providers later stated his ulcers were due to venous stasis, not his drug use.  Tr. 1347 (citing, e.g., Tr. 491-92).

Listing 4.11 requires, in part, recurrent ulceration or persistent ulceration that has not healed following at least three months of prescribed treatment, which the ALJ found was not met until May 2011.  Tr. 1345.  While the ALJ found Plaintiff met the Listing beginning in May 2011 because that is the month the ulcers began, the medical records demonstrate Plaintiff's lower right leg ulcers began in February 2011.  Tr. 542, 1345.  Although the records indicate the February 2011 wound was located at the same site as the May 2011 ulcer, the ALJ did not discuss why the ulcer in May 2011 meets the Listing when it did not in February 2011.  Plaintiff argued at the hearing that he had recurrent ulcers beginning in 2008.  Tr. 1408.  The medical records note multiple ulcers that occurred prior to May 2011.  Tr. 400, 423, 533, 535, 542.  Further, the ALJ does not address Dr. Staley's July 2012 opinion that Plaintiff does not meet Listing 4.11 because his ulcers were self-induced.  Tr. 118.

Defendant argues the ALJ properly determined Plaintiff's onset date by relying on the medical evidence and opinions of Dr. Sauerwein.  ECF No. 16 at 12-13.  Dr. Sauerwein gave disabling opinions in June and July 2011 but did not opine

ORDER - 17

as to the onset of the disabling limitations.  Tr. 761-63, 766-68.  As the ALJ

inaccurately stated the non-healing ulcers began in May 2011, did not provide an

explanation as to why May 2011 was the appropriate onset date beyond the

inaccurate statement that it is the month the ulcers began, and the opinions relied

upon did not give an onset date, there is inadequate evidence to support the ALJ's

determination of the onset date of disability.

On remand, the ALJ's decision regarding Plaintiff's eligibility for benefits

from May 1, 2011 forward shall remain undisturbed.  The ALJ is directed to call a

medical expert and a psychological expert to assist in determining whether Plaintiff

met or equaled a listing prior to May 1, 2011, and to assist in determining

Plaintiff's RFC prior to May 1, 2011, should such determination be necessary.

Further, if one or both experts opines Plaintiff became disabled prior to May 1,

2011, the ALJ shall take testimony on when Plaintiff became disabled, and if his

substance use was a material factor.  If necessary, the ALJ will reconsider if there

is good cause to reopen the prior application.

**C. Plaintiff's Symptom Claims**

Plaintiff faults the ALJ for failing to rely on reasons that were clear and

convincing in discrediting his symptom claims.  ECF No. 14 at 19-21.  An ALJ

engages in a two-step analysis to determine whether to discount a claimant's

testimony regarding subjective symptoms.  SSR 16–3p, 2016 WL 1119029, at *2.

ORDER - 18

1    "First, the ALJ must determine whether there is objective medical evidence of an

2    underlying impairment which could reasonably be expected to produce the pain or

3    other symptoms alleged." *Molina*, 674 F.3d at 1112 (quotation marks omitted).

4    "The claimant is not required to show that [the claimant's] impairment could

5    reasonably be expected to cause the severity of the symptom [the claimant] has

6    alleged; [the claimant] need only show that it could reasonably have caused some

7    degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

8        Second, "[i]f the claimant meets the first test and there is no evidence of

9    malingering, the ALJ can only reject the claimant's testimony about the severity of

10   the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the

11   rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations

12   omitted).  General findings are insufficient; rather, the ALJ must identify what

13   symptom claims are being discounted and what evidence undermines these claims.

14   *Id*. (quoting *Lester*, 81 F.3d at 834; *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th

15   Cir. 2002) (requiring the ALJ to sufficiently explain why it discounted claimant's

16   symptom claims)).  "The clear and convincing [evidence] standard is the most

17   demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995,

18   1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin*., 278 F.3d 920,

19   924 (9th Cir. 2002)).

20

ORDER - 19

1    Factors to be considered in evaluating the intensity, persistence, and limiting

2 effects of a claimant's symptoms include: 1) daily activities; 2) the location,

3 duration, frequency, and intensity of pain or other symptoms; 3) factors that

4 precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and

5 side effects of any medication an individual takes or has taken to alleviate pain or

6 other symptoms; 5) treatment, other than medication, an individual receives or has

7 received for relief of pain or other symptoms; 6) any measures other than treatment

8 an individual uses or has used to relieve pain or other symptoms; and 7) any other

9 factors concerning an individual's functional limitations and restrictions due to

10 pain or other symptoms.  SSR 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. §§

11 404.1529(c), 416.929(c).  The ALJ is instructed to "consider all of the evidence in

12 an individual's record," to "determine how symptoms limit ability to perform

13 work-related activities."  SSR 16-3p, 2016 WL 1119029, at *2.

14    The ALJ found that Plaintiff's medically determinable impairments could

15 reasonably be expected to cause some of the alleged symptoms, but that Plaintiff's

16 statements concerning the intensity, persistence, and limiting effects of his

17 symptoms were not entirely consistent with the evidence.  Tr. 1340.  Plaintiff

18 challenges only the ALJ's conclusion that the objective medical evidence and

19 Plaintiff's activities of daily living were inconsistent with Plaintiff's symptom

20 complaints.  ECF No. 14 at 15-16.  Plaintiff failed to challenge the two other

ORDER - 20

1    reasons the ALJ cited in support of his finding that Plaintiff's symptom complaints

2    were not entirely credible, thus, any challenges are waived and the Court may

3    decline to review them.  *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d

4    1155, 1161 n.2 (9th Cir. 2008).  However, upon review, the Court finds that the

5    ALJ provided specific, clear, and convincing reasons, supported by substantial

6    evidence, to support his finding.  Tr.  1340-42.

7        *1.  Inconsistent with Objective Medical Evidence*

8        The ALJ found Plaintiff's symptom complaints were not supported by the

9    medical evidence. Tr. 1340-41.  An ALJ may not discredit a claimant's symptom

10   testimony and deny benefits solely because the degree of the symptoms alleged is

11   not supported by objective medical evidence.  *Rollins v. Massanari*, 261 F.3d 853,

12   857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991);

13   *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989); *Burch*, 400 F.3d at 680.

14   However, the objective medical evidence is a relevant factor, along with the

15   medical source's information about the claimant's pain or other symptoms, in

16   determining the severity of a claimant's symptoms and their disabling effects.

17   *Rollins*, 261 F.3d at 857; 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2).

18       An April 2008 lumbar MRI demonstrated moderate degenerative disc

19   disease of the L5-S1 but also showed Plaintiff otherwise had well-maintained

20   discs, with no significant stenosis or nerve root compression.  Tr. 372.  Dr.

ORDER - 21

1   Sauerwein reviewed an MRI in October 2008 and stated the "MRI was negative."

2   Tr. 361.  Although the ALJ stated there was unremarkable imaging in October

3   2008, there is no MRI dated October 2008.  Tr. 1340.  However, the ALJ

4   reasonably found the imaging was inconsistent with Plaintiff's complaints of

5   chronic back pain, given Dr. Sauerwein's statement that the MRI was negative.

6   Further, the ALJ noted that while Plaintiff complained of significant limitations

7   due to his back impairment and skin ulcers, Plaintiff had some abnormal findings,

8   such as poor range of motion and tenderness, but Plaintiff also had numerous

9   normal physical exams throughout the relevant period.  Tr. 1340-41 (citing, e.g.,

10  Tr. 424, 454, 516, 520, 535, 542, 548, 832).  The ALJ also noted some of the

11  abnormal findings may have been related to Plaintiff's exaggerated pain

12  complaints associated with drug-seeking behavior.  Tr. 1340 (citing Tr. 355-81).

13      While Plaintiff reported knee symptoms and the need for a cane, the ALJ

14  noted Plaintiff reported improvement after surgery in December 2008.  Tr. 1340

15  (citing Tr. 337).  Plaintiff later sought treatment for right knee pain, during which

16  Plaintiff had slight swelling and acute tenderness of the posterolateral knee but the

17  exam was otherwise normal.  Tr. 1340 (citing Tr. 429).  Plaintiff had normal range

18  of motion even when he complained of knee pain.  Tr. 1340 (citing Tr. 431).

19  Although Plaintiff reported the cane was prescribed, the ALJ found there was no

20  prescription or note indicating a need for a cane in the record.  Tr. 1341.  Medical

1  records demonstrate no noted need for a cane in multiple appointments and

2  assessments.  Tr. 751, 1249, 2041.

3        Although Plaintiff alleges disability in part due to mental health symptoms,

4  the ALJ noted Plaintiff had multiple normal mental status exams.  Tr. 1341 (citing

5  Tr. 340, 520, 528).  Plaintiff was observed as having a decent mood and being

6  upbeat.  Tr. 1342 (citing Tr. 412, 619).  Plaintiff argues the objective evidence

7  supports his symptom complaints and argues the ALJ cited to irrelevant evidence,

8  such as findings of stable edema when Plaintiff's primary complaint related to his

9  hepatitis C is fatigue.  ECF No. 14 at 20.  However, the ALJ reasonably found that

10  the objective evidence is inconsistent with Plaintiff's symptoms complaints.  On

11  this record, the ALJ reasonably concluded Plaintiff's symptoms were not as

12  limiting as Plaintiff claimed.  This finding is supported by substantial evidence and

13  was a clear and convincing reason, coupled with the other reasons offered, to

14  discount Plaintiff's symptom complaints.

15       *2.  Improvement with Treatment*

16        The ALJ found that Plaintiff's symptoms appeared to improve with

17  treatment.  Tr.  1340-42.  The effectiveness of treatment is a relevant factor in

18  determining the severity of a claimant's symptoms.  20 C.F.R. §§ 404.1529(c)(3),

19  416.929(c)(3)(2011); *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006

20  (9th Cir. 2006) (determining that conditions effectively controlled with medication

ORDER - 23

1  are not disabling for purposes of determining eligibility for benefits); *Tommasetti*

2  *v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (recognizing that a favorable

3  response to treatment can undermine a claimant's complaints of debilitating pain or

4  other severe limitations).

5       The ALJ noted that Plaintiff had a meniscal tear but reported feeling much

6  better after undergoing arthroscopic surgery in December 2008.  Tr. 1340 (citing

7  Tr. 337, 406-07).  The ALJ found that prior to May 2011, Plaintiff's skin infections

8  were successfully treated with medication several times.  Tr. 1341 (citing Tr. 420-

9  21, 430, 450).  Plaintiff reported his mental health symptoms were stable with

10  medication.  Tr. 1342 (citing Tr. 412, 619).  While the medical records

11  demonstrate Plaintiff's skin infections stopped responding to treatment prior to

12  May 2011, Tr. 533, any error would be harmless as the ALJ reasonably concluded

13  several of Plaintiff's other conditions improved with treatment, and the ALJ gave

14  other clear and convincing reasons to discount Plaintiff's symptom complaints.

15  *See Molina v. Astrue,* 674 F.3d at 1115.  This finding is supported by substantial

16  evidence and was a clear and convincing reason to discount Plaintiff's symptom

17  complaints.

18       *3. Failure to Seek Treatment*

19       The ALJ found Plaintiff did not seek any mental health treatment prior to

20  May 2011.  Tr. 1341.  An unexplained, or inadequately explained, failure to seek

ORDER - 24

treatment or follow a prescribed course of treatment may be considered when evaluating the claimant's subjective symptoms. *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007). And evidence of a claimant's self-limitation and lack of motivation to seek treatment are appropriate considerations in determining the credibility of a claimant's subjective symptom reports. *Osenbrock v. Apfel*, 240 F.3d 1157, 1165-66 (9th Cir. 2001); *Bell-Shier v. Astrue*, 312 F. App'x 45, *3 (9th Cir. 2009) (unpublished opinion) (considering why plaintiff was not seeking treatment). When there is no evidence suggesting that the failure to seek or participate in treatment is attributable to a mental impairment rather than a personal preference, it is reasonable for the ALJ to conclude that the level or frequency of treatment is inconsistent with the alleged severity of complaints. *Molina*, 674 F.3d at 1113-14. But when the evidence suggests lack of mental health treatment is partly due to a claimant's mental health condition, it may be inappropriate to consider a claimant's lack of mental health treatment when evaluating the claimant's failure to participate in treatment. *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996).

Plaintiff did not participate in mental health treatment prior to the established onset date, May 1, 2011. Tr. 1341. Plaintiff does not offer any explanation as to why he did not seek mental health treatment. On this record, the ALJ reasonably concluded Plaintiff's mental health symptoms were not as limiting

ORDER - 25

as Plaintiff claimed.  This finding is supported by substantial evidence and was a clear and convincing reason to discount Plaintiff's symptom complaints.

### 4.  Activities of Daily Living

The ALJ found Plaintiff's activities of daily living were inconsistent with his symptom complaints.  Tr. 1342.  The ALJ may consider a claimant's activities that undermine reported symptoms.  *Rollins*, 261 F.3d at 857.  If a claimant can spend a substantial part of the day engaged in pursuits involving the performance of exertional or non-exertional functions, the ALJ may find these activities inconsistent with the reported disabling symptoms.  *Fair*, 885 F.2d at 603; *Molina*, 674 F.3d at 1113.  "While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discount a claimant's symptom claims when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting" or when activities "contradict claims of a totally debilitating impairment."  *Molina*, 674 F.3d at 1112-13.

The ALJ noted Plaintiff engaged in multiple physical activities from 2008 through 2010, including construction work, painting, roofing, "side jobs," moving a lawn mower, and mowing the law.  Tr. 1342 (citing Tr. 409-10, 427, 429).  While Plaintiff alleged difficulty being around people, the ALJ noted the records do not indicate he had difficulties attending appointments or being around others, and Plaintiff reported he uses public transportation.  Tr. 1341 (citing Tr. 311).  On this

ORDER - 26

record, the ALJ reasonably concluded Plaintiff's activities of daily living were

inconsistent with Plaintiff's claims of disabling limitations prior to May 2011.

This finding is supported by substantial evidence and was a clear and convincing

reason to discount Plaintiff's symptom complaints.  Plaintiff is not entitled to

remand on these grounds.

**D. Remedy**

Plaintiff urges this Court to credit Dr. Sauerwein's opinions and Plaintiff's

symptom testimony as true, and to remand for an immediate award of benefits.

ECF No. 14 at 16, 21; ECF No. 17 at 10-11.

"The decision whether to remand a case for additional evidence, or simply to

award benefits is within the discretion of the court."  *Sprague v. Bowen*, 812 F.2d

1226, 1232 (9th Cir. 1987) (citing *Stone v. Heckler*, 761 F.2d 530 (9th Cir. 1985)).

When the Court reverses an ALJ's decision for error, the Court "ordinarily must

remand to the agency for further proceedings."  *Leon v. Berryhill*, 880 F.3d 1041,

1045 (9th Cir. 2017); *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) ("the

proper course, except in rare circumstances, is to remand to the agency for

additional investigation or explanation"); *Treichler v. Comm'r of Soc. Sec. Admin.*,

775 F.3d 1090, 1099 (9th Cir. 2014).  However, in a number of Social Security

cases, the Ninth Circuit has "stated or implied that it would be an abuse of

discretion for a district court not to remand for an award of benefits" when three

ORDER - 27

conditions are met.  *Garrison*, 759 F.3d at 1020 (citations omitted).  Under the

credit-as-true rule, where (1) the record has been fully developed and further

administrative proceedings would serve no useful purpose; (2) the ALJ has failed

to provide legally sufficient reasons for rejecting evidence, whether claimant

testimony or medical opinion; and (3) if the improperly discredited evidence were

credited as true, the ALJ would be required to find the claimant disabled on

remand, the Court will remand for an award of benefits.  *Revels v. Berryhill*, 874

F.3d 648, 668 (9th Cir. 2017).  Even where the three prongs have been satisfied,

the Court will not remand for immediate payment of benefits if "the record as a

whole creates serious doubt that a claimant is, in fact, disabled."  *Garrison*, 759

F.3d at 1021.

Here, Plaintiff urges Dr. Sauerwein's opinions and Plaintiff's symptom

complaints be credited as true.  However, Plaintiff's statements were properly

rejected, as discussed *supra*.  Further, Dr. Sauerwein gave multiple opinions with

differing opinions as to Plaintiff's functioning during overlapping time periods.

Further proceedings are necessary to resolve conflicts in the evidence including the

conflicting medical opinions.  As such, the case is remanded for further

proceedings.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court concludes the ALJ's decision is not supported by substantial evidence and is not free of harmful legal error.  Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Summary Judgment, **ECF No. 14**, is **GRANTED**.

2. Defendant's Motion for Summary Judgment, **ECF No. 16**, is **DENIED**.

3. The Clerk's Office shall enter **JUDGMENT** in favor of Plaintiff REVERSING and REMANDING the matter to the Commissioner of Social Security for further proceedings consistent with this recommendation pursuant to sentence four of 42 U.S.C. § 405(g).

The District Court Executive is directed to file this Order, provide copies to counsel, and **CLOSE THE FILE.**

DATED May 1, 2020.

_s/Mary K. Dimke_
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE

ORDER - 29